09-CV-00504-CMP

FILED ___ ENTERED
LODGED ___ RECEIVED

APR 14 2009

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
              DEPUTY

IN THE UNITED STATED DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DAVID M. WILLIAMS,                    ) CAUSE NO. C09-0504 RAJ
                                      )
            Plaintiff,                )
                                      )
    v.                                ) COMPLAINT FOR BREACH OF
                                      ) CHANGE IN CONTROL
FEDERAL DEPOSIT INSURANCE             ) AGREEMENT
CORPORATION, in its capacity as       )
receiver for Washington Mutual Bank,  ) **JURY TRIAL DEMANDED**
                                      )
                                      )
            Defendant.                )

Plaintiff through counsel alleges as follows:

### I.   PARTIES

1.   Plaintiff is a resident of Seattle, King County, Washington. At the times material to this Complaint, Plaintiff was an employee of Washington Mutual Bank under the terms and conditions of a Change in Control Agreement.

2.   Defendant is the agency charged by law with administering the Federal Deposit Insurance Act and the federal bank deposit insurance system. At the times material to this Complaint Defendant was the Receiver for Washington Mutual Bank.

COMPLAINT FOR BREACH OF
CHANGE IN CONTROL AGREEMENT - 1

LAW OFFICES OF SIDNEY J. STRONG
600 University St.
One Union Square, Suite 2100
Seattle, WA 98101
Phone (206) 623-5221
Fax (206) 623-5214

ORIGINAL

## II. JURISDICTION AND VENUE

3. This action arises under the Federal Deposit Insurance Act, 12 U.S.C. § 1811 *et seq*, as amended. Plaintiff filed an administrative claim against the receivership under the provisions of that Act, and this action was commenced within 60 days of the disallowance of that claim. This Court has jurisdiction over the subject matter of this action pursuant to 12 U.S.C. § 1821(d)(6) and 28 U.S.C. § 1331.

4. Venue is proper in this Court under § 1821(d)(6) and 28 U.S.C. § 1391(c) & (e) as the principal place of business for Washington Mutual Bank, the failed institution, is in the Western District.

## III. BACKGROUND

5. On December 17, 2007 Plaintiff entered into a Change in Control Agreement with Washington Mutual Bank, which contained terms and conditions of Plaintiff's employment. Attached hereto as Exhibit A and incorporated herein by this reference is a copy of the Change in Control Agreement.

6. In part, the Change in Control Agreement provided that plaintiff would receive a severance payment should a change in control of Washington Mutual Bank cause the loss of his position with the Bank.

7. On September 25, 2008, the Director of the Office of Thrift Supervision appointed Defendant as receiver for Washington Mutual Bank, which immediately took possession of the bank

COMPLAINT FOR BREACH OF
CHANGE IN CONTROL AGREEMENT - 2

LAW OFFICES OF SIDNEY J. STRONG
600 University St.
One Union Square, Suite 2100
Seattle, WA 98101
Phone (206) 623-5221
Fax (206) 623-5214

8. On the same date, Defendant sold substantially all the assets of Washington Mutual Bank, including its stock to JPMorgan Chase Bank, National Association.

9. On February 3, 2009 JPMorgan Chase Bank eliminated Plaintiff's position under circumstances constituting a resignation for "good reason" as provided in Section 5(j)(3) of the Change in Control Agreement (Exhibit A).

10. Plaintiff filed a timely Proof of Claim with Defendant demanding payment of the severance promised him as provided in the Change in Control Agreement (Exhibit A).

11. Defendant mailed Plaintiff a Notice of Disallowance of Claim, dated February 26, 2009. In part, the notice stated that Plaintiff's claim was disallowed because:

> This claim is not valid against Washington Mutual Bank or the FDIC as Receiver. Washington Mutual Bank's failure was an act of law, not a change in control, when the institution was placed into receivership. The receivership event does not qualify as a change in control. Moreover, Washington Mutual Bank was placed in receivership before any change in control occurred with the Holding Company. Paragraphs (5)(c) and (f) of the "Change in Control Agreement" defines a change in control as a shift in majority control of Washington Mutual, Inc. (or its Board), which is the Holding Company, or the sale of its assets—not in terms of the control of Washington Mutual Bank.

12. These assertions and conclusions are contrary to the express provisions of the Change in Control Agreement (Exhibit A) and are in excess of the duties and obligations imposed on Defendant by law.

COMPLAINT FOR BREACH OF
CHANGE IN CONTROL AGREEMENT - 3

LAW OFFICES OF SIDNEY J. STRONG
600 University St.
One Union Square, Suite 2100
Seattle, WA 98101
Phone (206) 623-5221
Fax (206) 623-5214

## IV. CLAIM

13. Plaintiff incorporates the allegations contained in paragraphs 1 through 12 as if fully set forth.

14. This Court has de novo jurisdiction to consider the claim Plaintiff set forth in his Proof of Claim with Defendant.

15. Plaintiff's claim is a valid and proven claim against Defendant and Defendant is obligated to pay that claim subject to and in accordance with 12 U.S.C. § 1821(e)(3).

THEREFORE, Plaintiff requests the Court grant the following relief against Defendant:

(1) An Order declaring Plaintiff's Claim to be valid and proven;

(2) An Order directing Defendant to pay Plaintiff's Claim from the assets of the receivership as permitted by law;

(3) Enter a judgment against Defendant in the amount of Plaintiff's claim;

(4) Award Plaintiff costs and attorney fees as permitted by law; and

(5) Award Plaintiff such other relief as may be just.

## DEMAND FOR JURY TRIAL

Plaintiff, by and through his counsel, hereby demands a trial by jury on all claims otherwise triable by jury asserted in the complaint.

COMPLAINT FOR BREACH OF
CHANGE IN CONTROL AGREEMENT - 4

LAW OFFICES OF SIDNEY J. STRONG
600 University St.
One Union Square, Suite 2100
Seattle, WA 98101
Phone (206) 623-5221
Fax (206) 623-5214

1 | DATED this 14th day of April, 2009.

LAW OFFICES OF SIDNEY J. STRONG

*[signature: Sidney J. Strong]*

Sidney J. Strong, WSBA No. 1912
Attorney for Plaintiff

COMPLAINT FOR BREACH OF
CHANGE IN CONTROL AGREEMENT - 5

LAW OFFICES OF SIDNEY J. STRONG
600 University St.
One Union Square, Suite 2100
Seattle, WA 98101
Phone (206) 623-5221
Fax (206) 623-5214



# CHANGE IN CONTROL AGREEMENT

This Change in Control Agreement (the "Agreement") is between the Subsidiary (as defined below) of Washington Mutual, Inc. (the "Company") by which the undersigned employee is currently employed ("Washington Mutual") and the undersigned employee of Washington Mutual ("Employee"). The parties agree as follows:

1. <u>Employment</u>. Washington Mutual hereby employs Employee, and Employee hereby accepts employment, on the terms in this Agreement.

2. <u>Duties</u>. Employee shall perform such duties as Washington Mutual may from time to time direct.

3. <u>Compensation & Benefits</u>. Employee's compensation and benefits shall be as determined by Washington Mutual from time to time.

4. <u>Performance of Duties</u>. Employee agrees that during his or her employment with Washington Mutual: (a) Employee will faithfully perform the duties of such office or offices as he or she may occupy, which duties shall be such as may be assigned to him or her by Washington Mutual; (b) Employee will devote to the performance of his or her duties all such time and attention as Washington Mutual shall reasonably require, taking, however, from time to time, such reasonable vacations as are consistent with his or her duties and Washington Mutual policy; and (c) Employee will not, without Washington Mutual's express consent, become actively associated with or engaged in any business or activity during the term of this Agreement other than that of Washington Mutual (excepting customary family and personal activities, which may include management of personal investments so long as it does not entail active involvement in a business enterprise) and Employee will do nothing inconsistent with his or her duties to Washington Mutual.

5. <u>Termination</u>.

(a) Either Washington Mutual or Employee may terminate Employee's employment at any time in its sole discretion, with or without advance notice. Except as expressly provided in this Agreement or under any employee benefit plan maintained by the Company or its Subsidiaries, upon termination of employment, Washington Mutual shall have no liability to pay any further compensation or any other benefit or sum whatsoever to Employee. Notwithstanding any other provision of this Agreement, this Agreement shall terminate and no further amounts or benefits shall be payable under this Agreement if, at least 120 days prior to a Change in Control (as defined below), Employee transfers to another Washington Mutual position and, under Washington Mutual's policies then in effect, persons occupying that position or a similar position are not eligible to receive a change in control agreement.

(b) Upon termination of employment, Employee's rights under all employee pension plans, employee welfare benefit plans, bonus plans and stock option and restricted stock plans shall be determined under the terms of the plans and grants themselves except as otherwise specifically provided in this Agreement.

(c) If (i) Employee's employment is terminated by Washington Mutual or its successor without "cause" (as defined below) upon or within two years after a Change in Control or (ii) Employee resigns for "good reason" (as defined below) upon or within two years after a Change in

165753.4.5-12/07

Control and no reason for Washington Mutual to terminate Employee for "cause" exists, then Employee shall be entitled to receive, within five business days after the effective date of such termination or resignation, from Washington Mutual or its successor, a lump sum equal to two times Employee's annual compensation. Notwithstanding the preceding, the amount paid to employee under this Section 5(c) shall be offset by any payment received by Employee from Washington Mutual or any acquired company pursuant to: (i) a severance or change in control agreement, arrangement or plan, with the exception of any such payment received more than two years before either clause (i) or clause (ii) of this Section 5(c) was satisfied, or (ii) The Worker Adjustment and Retraining Notification Act (WARN Act) or any similar state or local law.

(d) Upon a Change in Control, the lapse of the restrictions on Employee's restricted stock, restricted stock units, stock options and other equity awards shall automatically be accelerated (and, to the extent applicable, the option or other award shall be fully exercisable) unless the applicable award agreement provides otherwise.

(e) For purposes of Section 5(c), Employee's "annual compensation" shall equal the sum of (i) the highest of the Employee's annual base salary for the calendar year in which termination or resignation occurs, the prior calendar year, or the calendar year immediately preceding the year in which the Change in Control occurred, (ii) the highest of (A) the Employee's unadjusted target bonus for the calendar year in which the termination or resignation occurs, (B) the Employee's actual bonus (including, for the avoidance of doubt, any portion of the actual bonus that was deferred or exchanged at the Employee's election for equity awards) for the prior calendar year (annualized if Employee was not employed by Washington Mutual for the entire previous calendar year), or (C) the Employee's actual bonus (including, for the avoidance of doubt, any portion of the actual bonus that was deferred or exchanged at the Employee's election for equity awards) for the calendar year immediately preceding the year in which the Change in Control occurred (annualized if Employee was not employed by Washington Mutual for the entire such calendar year), and (iii) the amount of the contributions or accruals made or anticipated to have been made on Employee's behalf to the Company's or its Subsidiaries' benefit plans for the calendar year in which the termination or resignation occurs, including without limitation contributions to and accruals under qualified and nonqualified defined contribution and defined benefit pension plans and plans qualified under Section 125 of the Internal Revenue Code of 1986, as amended (the "Code"). For purposes of this Section 5(e), bonus refers to monthly, quarterly, annual and other periodic performance-based bonuses based on individual and/or company results, and excludes non-periodic lump sum bonuses (such as sign-on and retention bonuses (even if such bonuses are also performance-based bonuses) and cash and non-cash prizes and awards, including awards from sales contests) and the value of equity awards except as otherwise specifically provided herein.

(f) Notwithstanding the foregoing, if any payment described in Section 5(c) and the value of any lapse of restrictions under Section 5(d), together with any other payments or transfers of property, would constitute a "parachute payment" under Section 280G of the Code, or any successor statute then in effect, the aggregate payments by Washington Mutual or its successor pursuant to Section 5(c) shall be reduced to an amount that, when combined with the value of any lapse of restrictions under Section 5(d) and any other payments or transfers of property taken into account under Section 280G, is one dollar less than the smallest sum that would be considered to be a "parachute" payment.

(g) For purposes of this Agreement, "Change in Control" shall mean:

1. The acquisition of ownership, directly or indirectly, beneficially or of record, by any Person (as defined below) or group (within the meaning of the Securities Exchange Act of 1934 and the rules of the Securities and Exchange Commission thereunder as in effect on the date of this

165753.4.5-12/07

Agreement), other than the Company, a Subsidiary or any employee benefit plan of the Company, or its Subsidiaries, of shares representing more than 25% of (i) the common stock of the Company, (ii) the aggregate voting power of the Company's voting securities or (iii) the total market value of the Company's voting securities;

2. During any period of 25 consecutive calendar months, a majority of the Board of Directors of the Company (the "Board") ceasing to be composed of individuals (i) who were members of the Board on the first day of such period, (ii) whose election or nomination to the Board was approved by individuals referred to in clause (i) above constituting at the time of such election or nomination at least a majority of the Board or (iii) whose election or nomination to the Board was approved by individuals referred to in clauses (i) and (ii) above constituting at the time of such election or nomination at least a majority of the Board; provided that, any director appointed or elected to the Board to avoid or settle a threatened or actual proxy contest shall in no event be deemed to be an individual referred to in clauses (i), (ii) or (iii) above;

3. The good-faith determination by the Board that any Person or group (other than a Subsidiary or any employee benefit plan of the Company or a Subsidiary) has acquired direct or indirect possession of the power to direct or cause to direct the management or policies of the Company, whether through the ability to exercise voting power, by contract or otherwise;

4. The merger, consolidation, share exchange or similar transaction between the Company and another Person (other than a Subsidiary), other than a merger in which the stockholders of Washington Mutual immediately before such merger, consolidation or transaction own, directly or indirectly, immediately following such merger, consolidation or transaction, at least seventy-five percent (75%) of the combined voting power of the surviving entity in such merger, consolidation or transaction in substantially the same proportion as their ownership immediately before such merger, consolidation or transaction; or

5. The sale or transfer (in one transaction or a series of related transactions) of all or substantially all of the Company's assets to another Person (other than a Subsidiary) whether assisted or unassisted, voluntary or involuntary.

(h) For purposes of this Agreement:

1. "Person" shall mean any individual, corporation, company, voluntary association, partnership, limited liability company, joint venture, trust, unincorporated organization or government (or any agency, instrumentality or political subdivision thereof).

2. "Subsidiary" shall mean a corporation that is wholly owned by the Company, either directly or through one or more corporations that are wholly owned by the Company.

3. "Related Company" shall mean any entity that is directly or indirectly controlled by the Company or any entity in which the Company has a significant equity interest, as determined by the Human Resources Committee of the Board.

(i) For purposes of this Agreement, Washington Mutual shall have "cause" to terminate Employee's employment if:

1. Employee violates the Company's or Washington Mutual's policies regarding drug or alcohol use on a recurring basis;

2. Employee is convicted of any felony or of a misdemeanor involving moral turpitude (including forgery, fraud, theft or embezzlement) or enters into a pretrial diversion or similar program in connection with the prosecution for an offense involving dishonesty, breach of trust or money laundering; or

3. Employee has engaged in: (a) dishonesty or fraud, (b) destruction or theft of property of the Company or a Subsidiary, (c) physical attack on another employee, (d) willful malfeasance or gross negligence in the performance of Employee's duties, or (e) misconduct materially injurious to the Company or a Subsidiary.

(j) For purposes of this Agreement, "good reason" for Employee to resign shall mean the occurrence of any of the following events without Employee's consent, provided that the Employee in all events shall have resigned within two years after the Change in Control:

1. The assignment of duties to Employee which (a) are materially different from Employee's duties immediately prior to the Change in Control, or (b) result in Employee having significantly less authority and/or responsibility than Employee had prior to the Change in Control.

2. A reduction of Employee's total pay opportunity from that in effect on the date of the Change in Control. Changes in the allocation of Employee's compensation between salary and incentive compensation, and changes to the criteria or method for determining incentive compensation amounts actually earned, shall not constitute "good reason" for Employee to resign. "Total pay opportunity" means base salary plus target incentive compensation, provided that in the case of incentive compensation for which a "target" is not defined (such as some sales commissions), the incentive component of the pay opportunity shall be the average incentive compensation of Employee during the 24 months preceding the Change in Control.

3. A relocation by more than 50 miles of Employee's principal place of employment as in effect on the date of the Change in Control, if the relocation increases the distance between Employee's principal residence and principal place of employment by more than 25 miles. Distances shall be measured by surface miles, using surface transportation over public streets, roads, highways and waterways, by the shortest route.

(k) For purposes of this Agreement, Employee shall be considered to have resigned for "good reason" only if Washington Mutual fails to cure within 15 days after receiving a written demand to cure that specifies the circumstances constituting "good reason." Also, Employee shall be considered to have resigned for "good reason" only if the effective date of Employee's resignation is within 60 days after the effective date of the occurrence that constitutes "good reason."

6. <u>Death or Disability</u>. If Employee should die or become disabled at any time during his or her employment hereunder, neither Employee nor anyone claiming by, through or under him or her shall be entitled to any further compensation or other sum under this Agreement (but shall be entitled to payments made by insurers under policies of life and disability insurance and any sums which may become available under any employee benefit plan).

7. <u>Confidentiality</u>. Employee agrees that information not generally known to the public to which Employee has been or will be exposed as a result of Employee's employment by Washington Mutual is confidential information that belongs to the Company or its Subsidiaries. This includes information developed by Employee, alone or with others, or entrusted to Employee, or entrusted to the

Williams,David M u153844

Company or its Subsidiaries by its customers or others. The Company's and its Subsidiaries' confidential information includes, without limitation, information relating to the Company's or its Subsidiaries' trade secrets, know-how, procedures, purchasing, accounting, marketing, sales, customers, clients, employees, business strategies and acquisition strategies. Employee will hold the Company's and its Subsidiaries' confidential information in strict confidence and will not disclose or use it except as authorized by Washington Mutual and for Washington Mutual's benefit.

        8.      Possession of Materials. Employee agrees that upon conclusion of employment or request by Washington Mutual, Employee shall turn over to Washington Mutual all documents, files, office supplies and any other material or work product in Employee's possession or control that were created pursuant to or derived from Employee's services for Washington Mutual.

        9.      Resolution of Disputes. Any dispute arising out of or relating to this Agreement or Employee's employment (or termination of employment) shall be submitted to and resolved by final and binding arbitration as provided in the Binding Arbitration Agreement attached as Exhibit A, whether the claimant is Employee or Washington Mutual. Employee and Washington Mutual also agree to exhaust all remedies available under the Washington Mutual, Inc. Dispute Resolution Process, as in effect from time to time, before initiating arbitration; provided that Employee shall not be required to use or follow the Dispute Resolution Process before initiating arbitration of any claim that arises upon or within two years after a Change in Control. In any dispute in arbitration or court arising out of or relating to this Agreement, the losing party shall pay the prevailing party's reasonable attorneys' fees, costs and expenses.

       10.     Agreement Not To Solicit Personnel. In consideration for the mutual undertakings of the parties under this Agreement and Employee's access as an employee of Washington Mutual to employees, contractors and consultants of the Company and Related Companies, Employee agrees that, during Employee's employment with Washington Mutual, and for a period of one year following termination of employment, Employee will not in any manner, directly or indirectly, solicit, encourage, induce, or recruit any person who is then an employee, contractor, or consultant of the Company or a Related Company, and whom Employee worked with, supervised, or had access to confidential information about while employed by Washington Mutual, to seek or accept employment or a contractual or consulting engagement with any business that competes with or provides services comparable to those provided by the Company or its subsidiaires.

       11.     Intellectual Property Ownership. In addition, in consideration of the mutual undertakings of the parties under this Agreement, Washington Mutual will own all rights to the results of Employee's work, including inventions and other intellectual property developed using Company or its subsidiaries' equipment, supplies, facilities or trade secret information. It will also own all rights to the results of any other effort of Employee (outside of Employee's performance of Washington Mutual work) that relate directly to Employee's work or to the Company's or its subsidiaries' business or actual or demonstrably anticipated research or development. Washington Mutual's rights extend to anything that is authored, conceived, invented, written, reduced to practice, improved or made by Employee, alone or jointly with others, during the period of Employee's employment by Washington Mutual. To the extent that the results of Employee's work or other effort constitute a "work made for hire" as defined under U.S. copyright law, the copyright shall belong solely to Washington Mutual. Otherwise, to the extent that such results are legally protectable, then Employee hereby irrevocably assigns all copyrights, patent rights, and other proprietary rights therein to Washington Mutual, and no further action by Employee is required to grant ownership to Washington Mutual. Employee will assist in preparing and executing documents, and will take any other steps requested by Washington Mutual, to vest, confirm or demonstrate its ownership rights, and Employee will not at any time contest the validity of such rights.

Employee understands that the termination of Employee's employment will not terminate or invalidate any of Employee's obligations, or Washington Mutual's rights, as described above.

Employee understands that the above commitments are in furtherance of the WaMu Intellectual Property Policy (a copy of which Employee has had an opportunity to review and is also found on wamu.net), which is incorporated herein but not set forth in full due to space limitations. If Employee lives or works in Washington, California, Illinois, or in any other state mentioned in the Invention Notice section of the policy, then the above assignment does not apply to inventions described in the Invention Notice for Employee's state.

12.  **Remedies for Certain Breaches Related to Solicitation and Intellectual Property.** Should Employee breach the agreements set forth in Section 10 or 11, in addition to any other remedy available to Washington Mutual, (a) the Employee shall immediately pay to Washington Mutual any payment made pursuant to Section 5(c); (b) pursuant to the relevant award agreements, any option that vested upon a Change in Control ("Option"), or portion of such Option, that remains unexercised shall terminate and cease to be exercisable; (c) pursuant to the relevant award agreements, for any Option, or portion of such Option, already exercised, Employee shall immediately pay to Washington Mutual any difference between the fair market value of the Option shares on the date of exercise and the exercise price of such Option shares; and (d) pursuant to the relevant award agreements, Employee will immediately pay to Washington Mutual the fair market value as of the Change in Control of any shares of restricted stock that vested upon a Change in Control. The parties agree that, to the extent the restrictions set forth in Sections 10 and 11 and this Section 12 are found to be unenforceable in any respect, this Section 12 shall be construed to be enforceable to the maximum extent permitted by law.

13.  **Miscellaneous.**

(a)  This Agreement is the entire agreement between the parties and may not be modified or abrogated orally or by course of dealing, but only by another instrument in writing duly executed by the parties. This Agreement replaces and supersedes all prior agreements on these subjects that Employee may have with the Company, or any Subsidiary, provided, however, that this Agreement shall supplement and shall not supersede any other agreement that Employee has signed in favor of the Company or any Subsidiary protecting the confidentiality of its confidential information or its interest in intellectual property. All such agreements remain in full force and effect. Employee acknowledges that Employee shall be entitled to change in control benefits, severance benefits or other employment separation benefits only as specifically provided in this Agreement (or, to the extent applicable according to its terms, as provided in the Washington Mutual, Inc. Special Severance Plan as in effect from time to time), notwithstanding the terms of any other representation, policy, severance plan, benefit plan or agreement.

(b)  Notwithstanding any provision of this Agreement to the contrary, if, at the time of Employee's termination of employment with Washington Mutual, he or she is a "specified employee" as defined in Section 409A of the Code, and one or more of the payments or benefits received or to be received by Employee pursuant to this Agreement would constitute deferred compensation subject to Section 409A, no such payment or benefit will be provided under this Agreement until the earlier of (a) the date that is six (6) months following Employee's termination of employment with Washington Mutual, or (b) the Employee's death. The provisions of this Section 13(b) shall only apply to the extent required to avoid Employee's incurrence of any penalty tax or interest under Section 409A of the Code or any regulations or Treasury guidance promulgated thereunder. In addition, if any provision of this Agreement would cause Employee to incur any penalty tax or interest under Section 409A of the Code or any regulations or Treasury guidance promulgated thereunder, Washington Mutual may reform such

provision to maintain to the maximum extent practicable the original intent of the applicable provision without violating the provisions of Section 409A of the Code.

(c) This Agreement has been drafted in contemplation of and shall be construed in accordance with and governed by the law of the state of Employee's principal place of employment with Washington Mutual.

(d) Employee acknowledges that this Agreement has been drafted by counsel for Washington Mutual, and that Employee has not relied upon such counsel with respect to this Agreement.

(e) If a court or arbitrator of competent jurisdiction or governmental authority declares any term or provision hereof invalid, unenforceable or unacceptable, the remaining terms and provisions hereof shall be unimpaired and the invalid, unenforceable or unacceptable term or provision shall be replaced by a term or provision that is valid, enforceable and acceptable and that comes closest to expressing the intention of the invalid, unenforceable or unacceptable term or provision.

(f) Employee may not assign Employee's rights or delegate Employee's duties under this Agreement.

Washington Mutual may assign its rights and delegate its duties under this Agreement to the Company or any Subsidiary or to any purchaser of all or substantially all of Washington Mutual's assets. The transfer of Employee's employment from Washington Mutual to any other Subsidiary or to the purchaser of all or substantially all of the assets of Washington Mutual shall not be considered a termination of employment, but this Agreement shall run to the benefit of, and be binding upon, the new employer. In the event of a Change in Control, this Agreement shall bind, and run to the benefit of, the successor to Washington Mutual resulting from the Change in Control.

DATED effective as of the 17th of December 2007.

WASHINGTON MUTUAL:    WASHINGTON MUTUAL BANK

By _____
Daryl D. David
Executive Vice President
Chief Human Resources Officer

EMPLOYEE:    _____
David M Williams

12/21/07
DATE

165753.4.5-12/07

EXHIBIT A
BINDING ARBITRATION AGREEMENT

This Binding Arbitration Agreement is a part of, and incorporated into, that certain Change in Control Agreement between the parties dated effective as of December 17, 2007. I, the employee who is a party to the Change in Control Agreement to which this Exhibit is attached, as well as Washington Mutual, agree as follows:

1. Any and all disputes that involve or relate in any way to my employment (or termination of employment) with Washington Mutual shall be submitted to and resolved by final and binding arbitration.

2. Washington Mutual and I understand that, by entering into this Binding Arbitration Agreement, we are each waiving any right we may have to file a lawsuit or other civil action or proceeding relating to my employment with Washington Mutual, and are waiving any right we may have to resolve employment disputes through trial by jury. We agree that arbitration shall be in lieu of any and all lawsuits or other civil legal proceedings relating to my employment.

3. This Binding Arbitration Agreement is intended to cover all civil claims that involve or relate in any way to my employment (or termination of employment) with Washington Mutual, including, but not limited to, claims of employment discrimination or harassment on the basis of race, sex, age, religion, color, national origin, sexual orientation, disability and veteran status (including claims under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Employee Retirement Income Security Act ("ERISA"), the Fair Labor Standards Act, the Immigration Reform and Control Act and any other local, state or federal law concerning employment or employment discrimination), claims based on violation of public policy or statute, and claims against individuals or entities employed by, acting on behalf of, or affiliated with Washington Mutual. However, ERISA plan benefit issues and claims for workers compensation or for unemployment compensation benefits are not covered by this Binding Arbitration Agreement. The statutes of limitations otherwise applicable under law shall apply to all claims made in the arbitration.

4. I understand and agree that, despite anything in this Binding Arbitration Agreement to the contrary, I am not waiving the right to file or institute a complaint or charge with any government agency authorized to investigate or resolve employment-related matters, including but not limited to the United States Equal Employment Opportunity Commission, the Department of Labor, the Occupational Safety and Health Administration, the National Labor Relations Board, the Office of Special Counsel for Unfair Immigration-Related Employment Practices or other appropriate immigration authorities, and any other comparable local, state or federal agency. I also understand and agree that, despite anything in this Binding Arbitration Agreement to the contrary, either party may request a court to issue such temporary or interim relief (including temporary restraining orders and preliminary injunctions) as may be appropriate, either before or after arbitration is commenced. The temporary or interim relief may remain in effect pending the outcome of arbitration. No such request shall be a waiver of the right to submit any dispute to arbitration.

5. This Binding Arbitration Agreement does not constitute an employment contract, require discharge only for cause, or require any particular corrective action or discharge procedures.

6. Arbitration under this Binding Arbitration Agreement shall be conducted before a single arbitrator and shall take place within the state where I am currently employed by Washington Mutual, or where I was so employed at the time of termination.

7. In order to initiate arbitration, Washington Mutual or I must notify the other party in writing of its decision to initiate arbitration, either by personal delivery or certified mail. The notification should include the following information about the employee: name, home address, work address, work and home phone number, and the following information about the occurrence: date, location, nature of the claims or dispute, facts upon which the claims are made, and remedy requested. Any notice of arbitration initiated by Washington Mutual shall be sent to my last known residence address as reflected in my personnel file at Washington Mutual. Notice of arbitration initiated by me shall be sent to Washington Mutual's Legal Department, attention General Counsel - Litigation. The Legal Department's address is currently Washington Mutual, 1301 Second Ave., WMC: 3501, Seattle, Washington 98101.

8. Within thirty (30) days after receipt of notice of arbitration, Washington Mutual and I will attempt to agree upon a mutually acceptable arbitrator. If Washington Mutual and I are unable to agree upon an arbitrator, we will submit the dispute to the American Arbitration Association ("AAA"). If AAA is, for some reason, unable or unwilling to accept the matter, we will submit the matter to a comparable arbitration service. The arbitration shall be conducted in accordance with the laws of the state in which the arbitration is conducted and the rules and requirements of the arbitration service being utilized, to the extent that such rules and requirements do not conflict with the terms of this Binding Arbitration Agreement.

9. At the request of either Washington Mutual or myself, the arbitrator will schedule a pre-hearing conference to, among other things, agree on procedural matters, obtain stipulations, and attempt to narrow the issues.

10. During the arbitration process, Washington Mutual and I may each make a written demand on the other for a list of witnesses, including experts, to be called and/or copies of documents to be introduced at the hearing. The demand must be served at least thirty (30) days prior to the hearing. The list and copies of documents must be delivered within twenty-five (25) days of service of the demand.

11. Each party shall be entitled to conduct a limited amount of discovery prior to the arbitration hearing. Each party may take a maximum of two (2) depositions. Each party may apply to the arbitrator for further discovery. Such further discovery may, in the discretion of the arbitrator, be awarded upon a showing of sufficient cause. If any documents to be produced or requested for production contain or refer to matters that are private, proprietary and/or confidential, the arbitrator shall make an appropriate protective order prohibiting or limiting use and disclosure of such documents and providing for return of documents produced after the arbitration is concluded.

12. Each party may file a brief with the arbitrator. Each brief must be served on the arbitrator and the other party at least five (5) working days prior to the hearing and, if not timely served, must be disregarded by the arbitrator. The brief shall specify the facts the party intends to prove, analyze the applicable law or policy, and specify the remedy sought. At the close of the hearing, each party shall be given leave to file a post-hearing brief. The time for filing the post-hearing brief shall be set by the arbitrator.